UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER J. BRANT,

   Plaintiff,

 v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

18-CV-1105
DECISION AND ORDER

---

On October 10, 2018, the plaintiff, Christopher J. Brant, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On April 10, 2019, Brant moved for judgment on the pleadings, Docket Item 10, and on August 9, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15.

For the reasons stated below, this Court denies Brant's motion and grants the Commissioner's cross-motion.

## **BACKGROUND**

### I. **PROCEDURAL HISTORY**

On March 23, 2015, Brant applied for Supplemental Security Income and Disability Insurance benefits. Docket Item 9 at 104. He claimed that he had been disabled since March 28, 2012, due to chronic body pain, traumatic brain injury ("TBI"), and soft tissue damage in his neck and spine. *Id.* On July 23, 2015, Brant received

notice that his application was denied because he was not disabled under the Act. *Id.* at 102-03. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 137, which was held on August 7, 2017, *id.* at 46. The ALJ then issued a decision on November 24, 2017, confirming the finding that Brant was not disabled. *Id.* at 14-27. Brant appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Brant's objection. Brant was examined by several different providers but only three—Kevin Duffy, Psy. D.; Michael P. Santa Maria, Ph.D.; and Karon Hubert, P.T., D.P.T., M.D.T.—are of most significance to the claim of disability here.

### A. Kevin Duffy, Psy. D.

On July 1, 2015, Dr. Duffy, a psychologist, evaluated Brant. Docket Item 9 at 335. Brant "was cooperative and presented with fair social skills." *Id.* at 336. He displayed "normal posture, normal motor behavior, and appropriate eye contact." *Id.* His affect, however, was "[s]omewhat anxious." *Id.*

Dr. Duffy opined that Brant's attention, concentration, and recent and remote memory skills were "at least mildly impaired secondary to a TBI." *Id.* at 337. Dr. Duffy found Brant's cognitive functioning to be "somewhat below average at this time." *Id.* Ultimately, Dr. Duffy concluded:

> The claimant can follow and understand simple directions and instructions. The claimant can perform simple tasks independently. The claimant may have at least moderate difficulties maintaining attention and concentration at times. The claimant is able to maintain a regular schedule. The

2

> claimant may have mild to moderate difficulties learning new
> tasks.  The claimant may have moderate difficulties
> performing complex tasks independently.  The claimant may
> have mild to moderate difficulties making appropriate
> decisions.  The claimant may have mild to moderate
> difficulties relating adequately with others at times.  The
> claimant may have at least moderate difficulties dealing
> appropriately with high levels of stress.

*Id.* at 337-38.

### B.  Michael P. Santa Maria, Ph.D.

In August 2017, Dr. Santa Maria, a board-certified neuropsychologist, evaluated Brant.  *Id.* at 414.  Dr. Santa Maria reported that "Brant was alert" and "made eye contact well."  *Id.* at 415.  Brant's "[s]peech was fluent, clear and goal-oriented without obvious word-finding difficulties or paraphasic errors."  *Id.*

Based on his evaluation, Dr. Santa Maria concluded that "[w]hile it might be possible for Mr. Brant to handle some competitive work with demands on general labor, he evidences difficulty learning and remembering information, [as well as] difficulty judging space and distance."  *Id.* at 419.  Additionally, Brant displayed "deficits in problem solving and difficulty with complex and sustained attention such that he potentially would have difficulty maintaining competitive employment in many even entry level competitive work roles with demands on manual labor."  *Id.*  Moreover, Brant would "have difficulty maintaining [an] adequate pace of work and difficulty following through with tasks in general[,] particularly multi-step tasks and particularly handling any out of the ordinary situation in which some level of adjustment or problem solving would be indicated."  *Id.*

### C. Karon Hubert, P.T., D.P.T., M.D.T.

In February 2015, Karon Hubert, a physical therapist, evaluated Brant. Based on that evaluation, P.T. Hubert determined that Brant "demonstrate[d] the capacity for SEDENTARY work [and] capacity for lifting, carrying, pushing and pulling." Docket Item 9 at 325. P.T. Hubert further noted that Brant's "[m]anual dexterity [was] within functional limits" but his "capacity to tolerate sitting for greater than one hour at a time may limit his ability to perform a job in the sedentary category." *Id.*

P.T. Hubert also found that Brant "self-limited" during the evaluation, which, P.T. Hubert explained, "is generally caused by 1) psychosocial issues like fear of re-injury, pain, anxiety, depression and/or 2) attempting to manipulate the test results." *Id.* Ultimately, P.T. Hubert concluded that "Brant is very limited for walking, standing, lifting carrying, pushing, pulling, bending and stair negotiation" and "is moderately limited for sitting and use of hands." *Id.* at 326.

### III. THE ALJ'S DECISION

In denying Brant's application, the ALJ analyzed Brant's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). If there is not a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If

there is a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether a severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and non-severe medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See id.* § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. *Id.* § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(4)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Brant had not engaged in substantial gainful activity since March 28, 2012, the alleged onset date of his disability. Docket Item 9 at 16. At step two, the ALJ found that Brant had the following severe impairments:

> obesity; status post severe closed head injury secondary to motor vehicle accident; status post craniotomy for skull fracture and cerebrospinal fluid leak repair; status post repeat craniotomy for repair of cerebrospinal fluid leak with iliac crest bone graft; status post open reduction, internal fixation frontal sinus fracture; status post open reduction, internal fixation bilateral Le fort fractures with prophylactic tracheostomy; status post open reduction, internal fixation left open humerus fracture; and neurocognitive disorder due to traumatic brain injury.

*Id.*

At step three, the ALJ determined that Brant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 9 at 17. At step four, the ALJ determined that, based on the entire record, Brant has the RFC to "perform sedentary work" with the following exceptions:

> [H]e can occasionally bend, climb ramps, and climb stairs; can never kneel, crouch, or crawl; and can never climb ladders, ropes, or scaffolds. He can understand, remember and carry out simple instructions and tasks; is able to work in a low stress work environment defined as including simple tasks and instructions, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes; and can have frequent interaction with supervisors and occasional interaction with co-workers and the general public.

6

*Id.* at 20.

Finally, based on that RFC and the testimony of a vocational expert ("VE"), the ALJ found that there are a significant number of jobs in the national economy—including "an addressor[,] . . . a document preparer[,] . . . and a ticket checker"—that Brant can perform. *Id.* at 26-27.

## STANDARD OF REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. ALLEGATIONS

Brant argues that the ALJ's RFC determination was not supported by substantial evidence because Dr. Duffy and Dr. Santa Maria opined that Brant had "a higher level of limitations than the ALJ concluded." Docket Item 10-1 at 4-5. Brant also asserts that

the ALJ erred in giving only partial weight to the opinion of P.T. Hubert. *Id.* at 5. Finally, Brant contends that the ALJ failed to account for testimony by the VE. *Id.*

## II. ANALYSIS

### A. Dr. Duffy's and Dr. Santamaria's Opinions

In determining a plaintiff's RFC, the ALJ must evaluate every relevant medical opinion. 20 C.F.R. § 416.927(c). But "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* (quoting 20 C.F.R. § 416.913(a)).

Moreover, an ALJ's RFC determination does not need to "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*; *see also* 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [the claimant's] residual functional capacity . . . , the final responsibility for deciding these issues is reserved to the Commissioner.").

Here, the ALJ gave "great weight" to the opinions of Dr. Duffy and Dr. Santa Maria. Docket Item 9 at 23-24. Brant contends, however, that both of those opinions "found limitations greater than those concluded by the ALJ." Docket Item 10-1 at 4. Specifically, "Dr. Duffy found at least moderate difficulties in maintaining attention and concentration[,] and at least moderate difficulties dealing appropriately with high levels

8

of stress." *Id.* Likewise, "Dr. Santa Maria found numerous impairments in memory and concentration and was not encouraged about the possibility of [Brant] being able to handle competitive work on a sustained basis." *Id.*

Contrary to Brant's contention, the ALJ's RFC accounted for Dr. Duffy's and Dr. Santa Maria's opinions. The ALJ found that Brant should be limited to "a *low stress* work environment" with "*simple* tasks and instructions, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes." Docket Item 9 at 20 (emphasis added). Brant does not explain—nor does the Court see—how those limitations are inconsistent with Dr. Duffy's findings that Brant may have moderate difficulties maintaining concentration and dealing with *high* levels of stress and Dr. Santa Maria's conclusion that Brant may not be able to handle *competitive* work.[1]

---

[1] "Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low-stress" jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing Social Security Ruling 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)). Here, Brant did not argue that the ALJ failed to make specific findings regarding his ability to manage stress, and this Court therefore is not required to consider that argument. *See Jaquish v. Comm'r of Soc. Sec.*, 2017 WL 3917019, at *2 n.2 (N.D.N.Y. Sept. 6, 2017).

Moreover, aside from Dr. Duffy's opinion that Brant would have "at least moderate difficulties dealing appropriately with *high* levels of stress," Docket Item 9 at 338 (emphasis added), the medical evidence does not suggest that stress would inhibit Brant's ability to function in the workplace. And the ALJ indeed addressed Brant's issues regarding stress in some detail. *See, e.g.*, Docket Item 9 at 23 (explaining that Brant's cognitive capabilities and activities of daily living "suggest[ ] the ability to perform work in a low stress environment as described above"); *id.* at 24 (explaining that Dr. Duffy's opinion and the record as a whole "suggest[ ] the ability to perform the range of low stress work described above"); *id.* (explaining that Brant's difficulty dealing with high levels of stress "ha[s] been accommodated by" the limitations in the RFC); *id.* (explaining that Dr. Santa Maria's "detailed and thorough evaluation . . . suggest[s] that [Brant] should be limited to the range of low stress work described above"); *id.* (noting

9

Moreover, the ALJ's RFC determination is supported by the overall record. As the ALJ explained, "due to [Brant]'s cognitive deficits, he is unable to perform the requirements of complex work. Still, [Brant]'s ability to count, recall objects immediately and after a delay, work for periods, and get along with friends and family, and his ability to be independent in cooking, laundry, housekeeping, medication management, grocery shopping and driving, suggests [sic] the ability to perform work in a low stress environment." *Id.* at 23.

The Court therefore finds that the ALJ appropriately weighed Dr. Duffy's and Dr. Santa Maria's opinions, and the ALJ's RFC determination is supported by substantial evidence.

### B. P.T. Hubert's Opinion

The ALJ may consider the opinions of "other sources"—such as physical therapists—but is not obligated to assign weight or give deference to those sources. *Id.* Nevertheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning,

---

that Brant's "ability to perform the above-described low stress work is supported by the overall record, including the claimant's daily activities and the opinion of Dr. Duffy"). So even if Brant had raised this argument, remand would not be required. *Cf. Chamberlin v. Colvin*, 2016 WL 3912531, at *3 (W.D.N.Y. July 20, 2016) (finding remand unnecessary where the claimant had "only moderate limitations dealing with stress but minimal to no limitations performing work-related functions associated with simple or complex tasks"); *Sweat v. Astrue*, 2011 WL 2532932, at *6 (N.D.N.Y. May 23, 2011) (remanding where consultative psychiatric examiner opined that the claimant would "have difficulty dealing appropriately with stress" and had "psychiatric problems which may interfere with [the claimant's] ability to function on a daily basis"), *report and recommendation adopted*, 2011 WL 2518830 (N.D.N.Y. June 24, 2011); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").

10

when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. When there is conflicting evidence in the claimant's record, the consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an other source. *See* 20 C.F.R. § 404.1527(c)(4).

Here, the ALJ adequately addressed the opinion of P.T. Hubert—who, as a physical therapist, is an "other source"—and appropriately explained the reasons for the weight he assigned it. The ALJ gave "[g]reat weight . . . to [Hubert's] conclusion that [Brant] should be limited to a range of sedentary work" because that conclusion was "consistent with the record." Docket Item 9 at 25. The ALJ gave "little weight," however, to "[t]he additional specific limitations regarding activities such as sitting and hand use." *Id.* The ALJ explained that this was because "the claimant was noted to self-limit during all simulation tasks, which meant that the claimant was unmotivated during the evaluation." *Id.* Moreover and more important, as the ALJ observed, "the limitations regarding the claimant's ability to sit or use his hands are generally inconsistent with the record as a whole." *Id.*

Brant argues that the ALJ erred in relying on Brant's self-limitation during P.T. Hubert's examination because "that self-limitation *could be* caused by fear of re-injury, pain, [or] anxiety." Docket Item 10-1 at 5 (emphasis added). As P.T. Hubert explained, however, such self-limitation also could be an attempt to manipulate the test results. Docket Item 9 at 325.

What is more, Brant's self-limitation was not the only reason that the ALJ rejected P.T. Hubert's conclusions regarding Brant's ability to sit or use his hands: the ALJ explained that such limitations were not supported by the overall record. For example,

11

those limitations were inconsistent with Brant's "activities of daily living such as playing with his son, cooking, cleaning, shopping, and working for periods." *Id.* Additionally, as the ALJ noted, a consultative examiner had observed a "lack of distress, intact dexterity, and normal grip." *Id.*

This Court may not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (quoting *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (explaining that "[t]he Commissioner's findings are not subject to reversal merely because two inconsistent conclusions could be drawn from the evidence, so long as his particular finding is supported by substantial evidence").

The ALJ clearly articulated his reasons for assigning little weight to P.T. Hubert's conclusions regarding Brant's ability to sit and use his hands, and the ALJ appropriately evaluated the consistency of those conclusions with the other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(4). Although the ALJ's interpretation of the record was not the only possible interpretation, it was supported by substantial evidence.

### C. The VE's Testimony

Brant also relies on testimony by the VE, *see* Docket Item 10-1 at 5, who opined that an individual who was off task for more "than 10 percent of the workday, say up to 15 to 20 percent" or who needed reminders for simple instructions "up to one-third of the day" would be unemployable, Docket Item 9 at 99. According to Brant, "those questions

12

and answers are more reflective of the medical record than the ALJ ultimately determined." Docket Item 10-1 at 5. Brant does not, however, identify any evidence in the record—let alone substantial evidence—suggesting either that he would be off task for more than 10 percent of the workday or that he would need reminders for simple instructions up to one-third of the day. Thus, the ALJ's analysis is not undermined by the VE's answers to those hypotheticals. *Cf. McIntyre*, 758 F.3d at 151 (explaining that "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical *as long as 'there is substantial record evidence to support the assumption[s]* upon which the vocational expert based his opinion'" (emphasis added) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983))).

For the reasons explained above, the Court finds that the ALJ's RFC determination is supported by substantial evidence. And that RFC, combined with the VE's testimony, supports the ALJ's conclusion that Brant is not disabled.

## **CONCLUSION**

The ALJ's decision neither was contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, for the reasons stated above, Brant's motion for judgment on the pleadings, Docket Item 10, is DENIED, the Commissioner's

13

cross-motion for judgment on the pleadings, Docket Item 15, is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: November 22, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE